## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      *Plaintiff,*

vs.                                                    **Civil No. 12-705**

2009 LAND ROVER RANGE ROVER, VIN: SALMP13489A302251,

2008 FORD F350 SUPER DUTY, VIN: 1FTSW31R68EA11380,

2008 FORD F250 SUPER DUTY, VIN: 1FTSW21R08EC94725,

2006 DODGE RAM 2500 MEGA CAB, VIN: 3D7KS29C56G165791,

$43,000.00 IN UNITED STATES CURRENCY,

      *Defendants,*

*and*

RAMON GONZALEZ, JR.,
MAEGAN CAVASOS,

      *Claimants.*

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff states:

### JURISDICTION AND VENUE

1.      This is a civil action *in rem* for forfeiture of Defendants which have been located and will be arrested by execution of a Warrant for Arrest in the District of New Mexico; and during the pendency of this action Defendants, or their equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2.      The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3.      Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4.      The "res" or Defendant Property which is the subject of this action are:

    a.   2009 LAND ROVER RANGE ROVER, VIN: SALMP13489A302251,
    b.   2008 FORD F350 SUPER DUTY, VIN: 1FTSW31R68EA11380,
    c.   2008 FORD F250 SUPER DUTY, VIN: 1FTSW21R08EC94725, and
    d.   2006 DODGE RAM 2500 MEGA CAB, VIN: 3D7KS29C56G165791,

(hereafter "Defendant Vehicles"), and

    e.   $43,000.00 IN UNITED STATES CURRENCY

(hereafter "Defendant Currency").

## PARTIES AND CLAIMANTS

5.      The following persons may claim an interest in Defendant Property:

    (a).   Ramon Gonzalez, Jr. at 6704 Coors Boulevard SW, Albuquerque, NM

        87121 and/or 63 Range Rd, Edgewood, NM 87015 and/or P.O. Box 2705,

        Edgewood, NM 87015, whose attorney is Paul Kennedy, 201 Twelfth St NW,

        Albuquerque, NM 87102;

    (b).   Maria G. Gonzalez at 63 Range Rd, Edgewood, NM 87015 and/or P.O. Box

        2705, Edgewood, NM 87015;

    (c).   Ramon O. Gonzalez, Sr. at Sandoval County Detention Center ID: 64980051,

        1000 Montoya Rd, Bernalillo, NM 87004 and/or Cibola County Detention

        Center ID: 12-030076, 114 McBride Rd, Suite A, Grants, NM 87020, whose

        attorney is Cody Kelly, 315 5th St NW, Albuquerque, NM 87102;

    (d).   Maegan Cavasos a/k/a Maegan Gonzalez at 6704 Coors Boulevard SW,

        Albuquerque, NM 87121, whose attorney is Paul Kennedy, 201 Twelfth St

        NW, Albuquerque, NM 87102.

## STATEMENT OF FACTS

6.      In 2009, Drug Enforcement Administration (DEA) Agents received information of

Homero Varela's drug trafficking activities.   Varela was trafficking multi-kilograms of drugs, including marijuana and cocaine, in the Albuquerque area.   Varela's direct source of supply of drugs was based in the Republic of Mexico.   Varela used his business enterprise to launder the proceeds from his drug sales.   Members of Varela's drug trafficking organization (DTO) were involved in the horse racing industry and utilized horse trailers to smuggle their drugs and conceal or invest the proceeds from their drug sales.   Varela at one time also owned an all-terrain vehicle (ATV) retail store.

7.     On November 10, 2011, based on the DEA investigation, through Court-authorized intercepted conversations on a telephone in use by Homero Varela, and physical surveillance, agents identified a truck and trailer driven by Ramon Gonzalez, Sr. which agents believed was carrying multi-kilogram quantities of cocaine.   Numerous intercepted conversations between Varela and others including Ramon Gonzalez, Jr., Gonzales, Sr., Andres Gonzalez, Steve Chavez, and the source of supply for the drugs, identified as Jaime Ibarra-Solis who is based in the Republic of Mexico, indicated that Varela was expecting a shipment of twenty-three kilograms of cocaine.   The calls indicated the cocaine shipment was originating in El Paso, Texas, and was going to be concealed in a horse trailer.   The calls indicated that Gonzalez, Sr., and Andres Gonzalez were going to transport the cocaine on Varela's behalf.   An El Paso County Sheriff's Deputy stopped the truck and trailer, which was driven by Gonzalez, Sr., for a traffic violation. Following a consensual search of the vehicle and trailer, officers discovered and seized approximately 22.91 net kilograms of cocaine and over 500 gross pounds of marijuana.   Ramon Gonzalez, Sr., was placed under arrest and charged with a violation of Texas state drug laws. Andres Gonzalez, who was escorting Gonzalez, Sr., in a separate vehicle, was not arrested at the time of the stop and subsequent seizure.

7.     On January 24, 2012, a Grand Jury in the District of New Mexico indicted Homero

Varela, Ramon Gonzalez, Jr., Ramon Gonzalez, Sr., Steve Chavez, and other defendants, on charges including Conspiracy to Distribute Controlled Substances, Money Laundering, Structuring Transactions to Evade Reporting Requirement, and Use of a Telephone to Facilitate a Drug Trafficking Offense, in *United States v. Homero Varela, et.al*, Criminal No. 12cr128 JB.

8.      On January 26, 2012, DEA Agents and other federal, state, and local law enforcement agencies executed ten search warrants in the Albuquerque area.   Three locations associated with the defendants were searched, including 215 C.E. Solomon Road, McIntosh, NM, which is a horse training facility, as drugs were being smuggled into the United States using horse trailers.   Two locations associated with Gonzalez, Jr., and Gonzalez, Sr., were searched:   6704 Coors Blvd SW, Albuquerque, NM, and 63 Range Rd, Edgewood, NM.

9.      On January 26, 2012, the Defendant Vehicles and Currency were seized.   Ramon Gonzalez, Sr., and Andres Gonzalez were arrested.   Ramon Gonzalez, Jr., surrendered himself to the DEA on February 1, 2012, and was arrested on the outstanding warrant issued as a result of the Grand Jury indictment.

10.      Following their arrests on January 26, 2012, both Gonzalez, Sr., and Andres Gonzalez gave post-arrest statements.   Each admitted their knowledge of the presence of drugs in the trailer and their involvement in the drug transaction which occurred on November 10, 2011.

11.      Intercepted conversations following the seizure of cocaine indicated that the storage units where Gonzalez, Sr., and Andres Gonzalez received the cocaine had been used for the same purpose at least three previous times.   During a conversation with Varela, Andres Gonzalez indicated that if Gonzalez, Sr., had left things alone, meaning the drugs in Andres Gonzalez's vehicle, Andres Gonzalez would have been on his way to the horse ranch with the drugs and Gonzalez, Sr., would not have had any illegal drugs when he was stopped.   Another intercepted conversation indicated that Gonzalez, Jr., wanted to make money to get Gonzalez, Sr.,

out of jail and that he was also concerned about keeping the horse ranch running.   Varela indicated that they could not be cowards and had to do something quick, meaning conduct a drug transaction, or everything would go down in about two months.   Varela also indicated that in the worst case scenario the ranch would be the one since it was already paid off.   Agents believe Varela was indicating that the Varela DTO had to continue its drug activities in order to keep the ranch operational and he also expressed concern about the possible seizure and forfeiture of the ranch.

12.     Intercepted conversations revealed the Varela DTO was in the process of fabricating a hidden compartment in a six-horse trailer, which would hold approximately 60 kilograms of cocaine.   Further, intercepted conversations indicated that the DTO was preparing to transport three separate shipments of 50 kilogram quantities of cocaine.

13.     Based on the investigation and intercepted conversations, agents believe the Varela DTO was utilizing their involvement in horse racing, including the horse training facility (the ranch), horse trailers, and horses as "cover loads" to smuggle cocaine and marijuana into New Mexico, as evidenced by the seizure on November 10, 2011.   Agents also believe the Varela DTO was utilizing proceeds from drug sales, as evidenced by intercepted conversations, in order to keep the ranch operational, which would enable the Varela DTO to continue to claim horse racing and horse training as their means of employment.   As a result of search warrants executed on January 26, 2012, a copy of an IRS tax audit on Gonzalez, Jr., was found which indicates that many of his business expenses for tax years 2008, 2009, and 2010 were disallowed, and Gonzalez, Jr., owes a combined $543,999 in back taxes, penalties, and interest.   For tax year 2010 there was unexplained income in the amount of $431,643.

14.     At 215 C.E. Solomon, McIntosh, New Mexico, Agents found scales.

15.    At 6704 Coors Blvd. SW, Albuquerque, New Mexico, Agents found drug ledgers indicating drug sales totaling hundreds of thousands of dollars, as well as a quantity of marijuana.

16.    At 63 Range Rd, Edgewood, New Mexico, another residence searched in connection with the Varela DTO, Agents found a metal "kilogram press" and several buckets/loaders from heavy equipment, which had been modified in order to create hidden compartments.

17.    The Varela DTO utilized proceeds from their drug sales to acquire other assets, including numerous motor vehicles and firearms.   Persons in the narcotics trade use weapons or firearms and ammunition to protect their ill-gotten goods.   Weapons or firearms are also used to protect drugs and persons from others including law enforcement officials who threaten their drug trade.

<u>2009 Land Rover</u>

18.    The Defendant 2009 Land Rover was seized at 6704 Coors Blvd. SW, Albuquerque, New Mexico.   This vehicle is registered to the mother of Ramon Gonzalez, Jr., Maria G. Gonzalez, P.O. Box 2705, Edgewood, NM 87105.

19.    Maria G. Gonzalez is also the registered owner of other assets seized from the Varela DTO and the subscriber of cell phones that were being used by, and under the dominion and control, of other members of the Varela DTO, including Ramon Gonzalez, Jr.

20.    On July 25, 2011 a series of conversations between Homero Varela and a source of supply for cocaine based in Mexico, since identified as Jaime Ibarra-Solis, were intercepted pursuant to a Court-authorized interception of conversations occurring over the phone in use by Varela.   During the conversations, it was apparent that Varela had received five kilograms of cocaine from Ibarra which were of poor quality and Varela was considering returning the cocaine to Ibarra or purchasing the cocaine for a reduced price.   During a conversation which occurred at

approximately 12:43 PM, Varela told Ibarra that he would call his buddy and have him come over and they would "check it out good", meaning examine the cocaine closely, and then they would "figure out the numbers good", meaning come to an agreeable price for the cocaine.

21.     Varela's next call, at approximately 1:30 PM, was to Gonzalez, Jr.   During the conversation, Varela asked Gonzalez, Jr. to come over to his residence.     Gonzalez, Jr. started to tell Varela something and then told Varela that he would drop by and they could talk.

22.     At approximately 2:03 PM, agents observed the Defendant 2009 Land Rover Range Rover depart Gonzalez, Jr.'s residence at 6704 Coors Blvd. SW, Albuquerque, New Mexico.

23.     At approximately 2:05 PM, agents observed the Defendant Range Rover arrive at Varela's residence located at 2510 Garner Road SW, Albuquerque, New Mexico.   The driver of the Range Rover was identified as Gonzalez, Jr.   Agents observed Gonzalez, Jr. and Varela go into the garage of Varela's residence.

24.     At approximately 2:55 PM, agents observed Gonzalez, Jr. exit Varela's garage and at approximately 2:58 PM, Gonzalez, Jr. departed the residence in the Range Rover.   During subsequent calls, Varela indicated to Ibarra that the cocaine was not satisfactory and asked that Ibarra's distributor retrieve the cocaine from Varela.

25.     Receipts and service records found in the Defendant 2009 Land Rover indicate the owners of the vehicle are Ramon Gonzalez, Jr., and Meagan Cavasos a/k/a/ Meagan Gonzalez, his girlfriend.

23.     On April 13, 2009, Ramon Gonzalez, Jr., made structured deposits of $9,000 cash and $6,000 cash into his Wells Fargo account in order to purchase a $90,000 cashier's check to LandRover of Albuquerque to purchase the Defendant 2009 Land Rover.

24.     There is no lien on the Defendant 2009 Land Rover.

<u>2008 Ford F350 Super Duty</u>

25.     Maria G. Gonzalez and Ramon Gonzalez, Jr., purchased the Defendant 2008 Ford F350 on February 26, 2007, with $30,000 down payment plus three cashier's checks in the amounts of $9,000, $9,000, and $12,000.   Within a couple of months, the loan on the Defendant 2008 Ford F350 was paid off with funds from two accounts:   from Maria Gonzalez' Bank of America account and from Ramon Gonzalez, Jr.'s, Wells Fargo account.

26.     The registered owners are Maria G. Gonzalez and Ramon Gonzalez, Jr., P.O. Box 2705, Edgewood, NM 87105.

27.     While funds for the purchase of the vehicle appear to be from accounts containing horse racing winnings, as stated above (paragraph 13), Agents believe the Varela DTO utilized proceeds from drug sales to keep the ranch operational, enabling the Varela DTO to claim horse racing and horse training as their means of employment.

<u>2008 Ford F250 Super Duty</u>

28.     The Defendant 2008 Ford F250 was purchased on January 9, 2008, by Ramon Gonzalez, Jr., and Maria Gonzalez, with $12,036 down payment, a $2,000 check from Maria Gonzalez' Bank of America account, and $8,000 from Ramon Gonzalez, Jr.'s Wells Fargo account *2860.   Some of the purchase price may have been paid from Ramon Gonzalez, Jr.'s Wells Fargo account *3734.

29.     Maria Gonzalez made car payments from her Bank of America account as follows: $2,394.02 on February 25, 2008; $4,788.04 on April 2, 2008; and $2,394.02 on May 15, 2008. Maria Gonzalez paid $790.04 cash and $4,000 cashier's check from Wells Fargo on November 18, 2008.   Cash deposits were made into Maria Gonzalez' Bank of America account comingled with horse racing winnings.

30.     Ramon Gonzalez, Jr., made car payments as follows:   $1,190 cash on September

8, 2008, and $2,380 cash on November 10, 2008.   He paid Wells Fargo cashier's checks of $6,000 on September 8, 2008, and $6,000 on September 10, 2008.

31.     Ramon Gonzalez, Jr., made the final car payment of $16,000 on December 29, 2008, from his Wells Fargo account *3734.   This check was funded from horse winnings, but several cash deposits were made into this account that comingled with horse race winnings.

32.     While funds for the purchase of the vehicle appear to be from accounts containing horse racing winnings, as stated above (paragraph 13), Agents believe the Varela DTO utilized proceeds from drug sales to keep the ranch operational, enabling the Varela DTO to claim horse racing and horse training as their means of employment.

33.     The registered owners are Maria G. Gonzalez and Ramon Gonzalez, Jr., P.O. Box 2705, Edgewood, NM 87105.

<u>2006 Dodge Ram 2500</u>

34.     The Defendant 2006 Dodge Ram 2500 Mega Cab was purchased on March 10, 2006, for $62,943, with an unknown amount of down payment, and financed through Daimler Chrysler.   It is registered to Maria Gonzalez and Ramon Gonzalez.

35.     Ramon Gonzalez, Sr., paid $1,198 per month, drawn from Bank of America account *9899.   The funds in this account are from cash deposits and horse racing winnings. Larger payments were made on occasion.

36.     On July 9, 2009, Ramon Gonzalez, Sr., made his final payment of $4,951.93.

37.     The registered owners are Maria G. Gonzalez and Ramon Gonzalez, Sr.

38.     While funds for the purchase of the vehicle appear to be from accounts containing horse racing winnings, as stated above (paragraph 13), Agents believe the Varela DTO utilized proceeds from drug sales to keep the ranch operational, enabling the Varela DTO to claim horse racing and horse training as their means of employment.

<u>$43,000 in U.S. Currency</u>

39.     On January 26, 2012, while executing the search warrant at 6704 Coors Blvd. SW, Albuquerque, New Mexico, Agents found the Defendant $43,000 U.S. Currency from the upstairs bedroom occupied by Ramon Gonzalez, Jr., and his live-in girlfriend, Maegan Cavasos.   The Defendant Currency was found in two locations in the bedroom:   a stack on the top right shelf of the TV stand, and a stack in the bedroom closet on the top shelf inside a white grocery bag.

40.     Both stacks of currency were divided into increments by rubber bands and placed in larger stacks, also secured by rubber bands.

41.     Ramon Gonzalez, Jr., and Maegan Cavasos are the occupants of 6704 Coors Blvd. SW, Albuquerque, NM.

42.     The Defendant Currency was found in the same residence (6704 Coors Blvd. SW, Albuquerque, New Mexico) as drug ledgers indicating drug sales totaling hundreds of thousands of dollars.   Approximately 8.5 gross kilograms of marijuana were seized from this residence. The Defendant 2009 Land Rover was seized from this residence.

43.     Ramon Gonzalez, Jr. has no employment history.

44.     Maria G. Gonzalez has no employment history.

45.     Ramon Gonzalez, Sr. has a criminal and drug history.

46.     Maegan Cavasos has no employment history.

### CLAIMS FOR RELIEF

47.     Defendant Vehicles are subject to arrest and forfeiture to Plaintiff under 21 U.S.C. § 881(a)(4) because they were used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of illegal controlled substances.

48.     Defendant Vehicles are subject to arrest and forfeiture to Plaintiff under 21 U.S.C. § 881(a)(6) because they was furnished, or intended to be furnished, in exchange for an

˘10˘

illegal controlled substance, or constitute proceeds traceable to such an exchange, or were used or intended to be used to facilitate a violation of the Controlled Substances Act.

49.     Defendant Vehicles are subject to arrest and forfeiture to Plaintiff under 31 U.S.C. § 5317(c)(2) as property involved in a violation of 31 U.S.C. § 5324, or any conspiracy to commit any such violation, or is property traceable to any such violation or conspiracy.

50.     Defendant Currency is subject to arrest and forfeiture to Plaintiff under 21 U.S.C. § 881(a)(6) because it was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

**WHEREFORE,** Plaintiff seeks arrest of Defendant Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Property, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

KENNETH J. GONZALES
UNITED STATES ATTORNEY

STEPHEN R. KOTZ
CYNTHIA L. WEISMAN
Assistant U.S. Attorneys
P. O. Box 607
Albuquerque, New Mexico 87103

**28 U.S.C. ' 1746 DECLARATION**

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture In Rem to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.


DATED: ___06|28|2012___

_____
Gerald Maestas, Special Agent
Drug Enforcement Administration

–12–